UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
L.I. HEAD START CHILD DEVELOPMENT                          MEMORANDUM OF
SERVICES, INC., PAUL ADAMS, derivatively                   DECISION AND ORDER
on behalf of COMMUNITY ACTION AGENCIES
INSURANCE GROUP and as class                               CV 00-7394 (ADS)
representative of all other persons similarly
situated,

                                    Plaintiffs,


                -against-


ECONOMIC OPPORTUNITY COMMISSION
OF NASSAU COUNTY, INC., ECONOMIC
OPPORTUNITY COUNCIL OF SUFFOLK,
INC., YONKERS COMMUNITY ACTION
PROGRAM, INC., and STELLA B. KEARSE
as Representative of the ESTATE OF JOHN
L. KEARSE, Deceased.

                                    Defendants.
-----------------------------------------------------------------x


**A P P E A R A N C E S :**


> **WELBY, BRANDY & GREENBLATT, LLP**
> Attorneys for Plaintiffs
> 11 Martine Avenue
> White Plains, NY 10606
> By:    Alexander A. Miuccio, Esq.
>            of Counsel
>
> **MARK E. GOIDELL, ESQ.**
> Attorneys for Defendants
> Economic Opportunity Commission
> of Nassau County, Inc. And
> Yonkers Community Action Program Inc.
> 377 Oak Street
> Suite 101
> Garden City, NY 11530

**BARRY V. PITTMAN, ESQ.**
Attorney for Defendant
Economic Opportunity Council of Suffolk, Inc.
26 Saxon Avenue
P.O. Box 5647
Bay Shore, NY 11706-0455

**LAW OFFICES OF FREDERICK K. BREWINGTON**
Attorneys for Defendant
Stella B. Kearse as Representative of the Estate of
John L. Kearse, Deceased
565 Peninsula Blvd.
Hempstead, NY 11550
By:     Frederick K. Brewington, Esq.
          of Counsel

**SPATT, District Judge.**

In a prior decision in this case, <u>L.I. Head Start Child Development Services, Inc. v.</u>
<u>Economic Opportunity Commission of Nassau County, Inc., et al.,</u> 634 F. Supp. 2d 290
(E.D.N.Y. 2009), the Court determined that defendants Economic Opportunity Commission of
Nassau County, Inc. ("EOC Nassau"), Economic Opportunity Council of Suffolk County, Inc.
("EOC Suffolk"), Yonkers Community Action Program, Inc. ("Yonkers CAP") (collectively the
"agencies"), and John L Kearse ("Kearse") violated their fiduciary duties under the provisions of
the Employee Retirement Income Security Act ("ERISA") by failing to make and ensure the
necessary contributions to adequately fund the Community Action Agencies Insurance Group
("CAAIG") welfare plan ("Plan").  The CAAIG is essentially a health insurance plan for
employees of anti-poverty agencies.

Following this liability determination, the Court directed the parties to appear for a
damages hearing.  In another decision dated and filed on October 20, 2011, the Court rendered a
decision as to the damages awarded to the plaintiffs.  In that decision, the Court directed the
parties to respond in writing "As to the issues of prevailing party reasonable attorneys fees."

The attorneys for the parties did respond to the issue of the "prevailing party's reasonable attorney fees." This decision is now rendered on that issue.

## I.  The Parties Contentions

### A.  As to the Plaintiffs

In his initial "Memorandum of Law", the plaintiffs' counsel proposed a billing rate of $400 per hour for his services. Alexander A. Miuccio, Esq. ("Miuccio"), who has been plaintiffs' counsel throughout this long and complicated litigation, has expertise in ERISA matters and more than 50 years of experience as a lawyer, mostly in the area of labor and employment law. Miuccio reviewed his lengthy efforts in this extended litigation, including "twenty-one trial sessions over a period of nineteen years."

According to Miuccio, "Recent case law establishes that rates of $400 per hour for partners are considered reasonable in the Eastern District". (Pltfs' Memorandum at 3). In addition, Miuccio states that during the course of this protracted litigation, eight associate attorneys and six paralegals/law clerks rendered legal services to the plaintiffs. The proposed hourly rates for the associates range from $165 per hour to $320 per hour. The proposed hourly rates for the paralegal/law clerks range from $35 per hour to $95 per hour.

Miuccio also contends that his services conform to the Johnson factors as set forth in the seminal case of Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008), citing to Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). In this regard, Miuccio reviewed the Johnson factors, and contends that his services were in accord with each one of the factors, and that "applying the Johnson factors, plaintiffs should be awarded the fees requested." (Pltfs' Memorandum at 9).

In addition, Miuccio contends that he should be fully compensated even though the

plaintiffs were unsuccessful on some of their claims. He bases this contention on the ground that the plaintiffs have now achieved the full benefit of what they sought in bringing this lawsuit; namely the plaintiffs have obtained monetary relief in a damages award of $832,945, which actually exceeded the relief sought by the plaintiffs in their complaint. Therefore, says Miuccio, "as the plaintiffs have achieved the maximum degree of success in this lawsuit, their counsel should recover a fully compensated fee, which encompasses all hours reasonably expended in the litigation, including the hours spend on unsuccessful claims." (Pltfs' Memorandum at 11).

Here, according to Miuccio it is evident that the plaintiffs showed a high degree of success on their two victorious claims; namely, the recovery achieved will cover the amount sought in the complaint. Miuccio concludes by saying that, "where a case results in an overall success for plaintiffs, their counsel is entitled to substantial, if not full, compensation for time spent on both successful and unsuccessful issues." (Pltfs' Memorandum at 12).

**B.  <u>As to the Defendants</u>**

Initially, the defendants contend that the plaintiffs are not entitled to an award of attorney's fees. To start with, say the defendants, "the award of attorney's fees is discretionary." (Dfts' Joint Memorandum at 3). The relevant statute provides: "In any action under this sub-chapter . . . by a participant beneficiary or fiduciary the Court in its discretion <u>may</u> allow a reasonable attorney fee and costs of action to either party". (Emphasis added). 29 U.S.C. § 1132 (g)(1). The defendants contend that the plaintiffs do not qualify as "participants, beneficiaries or fiduciaries" and are therefore not entitled to an award of attorneys fees.

The defendants also take issue with the Court's decision of October 20, 2011, in which the Court held that the Supreme Court in <u>Hardt v. Reliance Standard Life Insurance Co.</u>, ___ U.S. ___, 130 S.Ct. 2149, 176 L.Ed 2d 998 (2010) overruled the five factor test set forth in

<u>Chambless v. Masters, Matest Pilot Pension Plan</u>, 815 F.2d 869, 871 (2d Cir. 1987). The defendants contend that notwithstanding the rule in <u>Hardt</u> it may still be appropriate to utilize the five factor test. In this regard, the defendants cited <u>Toussaint v. J J Weiser Inc.</u>, 648 F.3d 108, 110-111 (2d Cir. 2011), which held that, "a court may apply – but is not required to apply – the <u>Chambless</u> factors in channeling its discretion when awarding fees under § 1132 (g)(1)."

The five <u>Chambless</u> factors are as follows:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

<u>Chambless</u>, 815 F.2d at 871.

However, in <u>Hardt</u>, the Supreme Court held that these five factors "bear no obvious relation to § 1132 (g)(1)'s text [and therefore] are not required for channeling a Court's discretion when awarding fees." Instead, the new test enunciated by the Supreme Court is to show that the prevailing plaintiff has achieved "some degree of success on the merits." <u>Hardt</u> at 2156, 2159. In this case, the Court has determined that the plaintiffs have achieved more than some degree of success and their counsel is entitled to prevailing party counsel fees.

Next, the defendants contend that if the Court does award an attorney's fee to the plaintiffs, the amount should be determined by the rule in the <u>Arbor Hill</u> case. <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty of Albany</u>, 522 F.3d 182, 184 (2d Cir 2008). Also, as set forth in <u>Blum v. Stenson</u>, 465 U.S. 886, 895-96, n.11, 104 S.Ct. 1541, 79 L. Ed. 2d 891 (1984), "the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and reputation." The term relevant "community" is "the district in which the Court sits." Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997). Here, the relevant "community" is the Long Island area in the Eastern District of New York.

The defendants complain that the plaintiffs offer only the Miuccio affirmation and memoranda and the voluminous time records and no additional evidence. There are no affidavits from other attorneys in support of the Miuccio application. Counsel for the plaintiffs responds to this contention by citing to cases that state that "a judge may rely in part on (his or her) own knowledge of private firm hourly rates in the community." Ass'n For Retarded Citizens of Connecticut v. Thorne, 685 F.3d 547, 554 (2d Cir. 1995) (quoting from Miele v. New York State Teamsters Conference Pension and Ret. Fund, 831 F.2d 407, 409 [2d Cir 1987]). The Court agrees. There need not be any corroborating affidavits from other attorneys in order to present a viable prevailing party attorney's fee application.

As to the hourly rate for the associates, the defendants complain that the plaintiffs "offer nothing from which the Court can determine the experience or expertise of any associate," so that no hourly rate can be determined for the associates. The Court disagrees and certainly can properly determine the reasonable hourly rates for the associates and law clerks.

The defendants also point to this Court's prior decision in L.I. Head Start v. Kearse, 96 F. Supp 2d 209, 215 (E.D.N.Y. 2000) in which the Court determined that the appropriate hourly rate for attorney Miuccio was $200 per hour. For the many reasons set forth in their memorandum, the defendants contend that the factors in Johnson support an hourly rate of $200 per hour in this case. In response, Miuccio states that the prior L.I. Head Start fee-fixing decision was rendered in the year 2000, eleven years before and "is not even remotely indicative of

6

prevailing rates in this district eleven years later." (Pltfs' Reply Memorandum at 4).

In addition, the defendants contend that the fee application by the plaintiffs' counsel is "grossly excessive . . . (and) replete with duplication and unnecessary efforts." (Dfts' Joint Memorandum at 11). In their major point, the defendants contend that a reduction must be imposed because of the plaintiffs' partial success. The defendants assert the Court must "exclude any hours dedicated to severable unsuccessful claims," citing to <u>Klimbach v. Spheron Corp.</u>, 407 F. Supp 2d 323, 331 (W.D.N.Y. 2006). The defendants emphasize that this Court expressly reserved decision with regard to the determination of whether "plaintiffs partial success require a reduction in this fee . . . [T]his issue will be confronted in the Court's determination in the amount of attorneys' fees. <u>L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.</u>, 820 F. Supp. 2d 410, 428 (E.D.N.Y. 2011).

The defendants assert that throughout the trial until the liability determination, the plaintiffs primarily claimed that the defendants breached their fiduciary duties by "diverting" the Head Start reserves and using these reserves to pay for claims of CAAIG beneficiaries and the administrative costs. After the Court's determination against the plaintiffs on this "diversion" claim, the plaintiffs instead successfully shifted their sights to the failure to make the necessary contributions to adequately fund the CAAIG. The defendants further contend that this "underfunded claim" bears no relationship and is wholly severable from the unsuccessful "diversion of Head Start reserves" claim. Therefore, the time and legal services devoted to the "diversion" claim and the other unsuccessful claims must be deducted.

In this regard, the defendants contend that there was "extraordinary waste" resulting from the plaintiffs' prosecution of the "diversion" claim, which constituted most of the trial time. Further, the defendants assert that additional wasted time – which should not incur counsel fees –

was spent on (1) incorrectly proceeding on defendants liability under ERISA § 515 (29 U.S.C.

§ 1145), an inapplicable statute initially adopted by the Court and then vacated; (2) seeking to

amend the complaint with time-barred theories of recovery; (3) extensive litigation regarding the

statute of limitations, an issue decided by the Court in favor of the defendants; and (4) the

resolution of the issue that the plaintiffs should not be charged with the knowledge of their

attorney in a class action case.

The defendants also contend that the time entries annexed to the plaintiffs' fee application

demonstrate that there was "grossly exaggerated and/or excessive . . . (and) wholly unnecessary"

work. The defendants occupy more than two pages of their Joint Memorandum in opposition to

demonstrate the alleged excessive and unnecessary and "shocking" time entries. (See pp. 14, 15

and 16). For example, the plaintiffs' counsel describes his trial preparation alone as "staggering"

and having totaled 198 hours. Further, the defendants also complain that plaintiffs' counsel

charged for clerical tasks such as filing papers; travel time; duplication work; vague and

generalized time entries; and "Block Billing".

As a result of all the claimed improper billing, for excessive, redundant and unnecessary

time charges, the defendants conclude that the Court should impose an across-the-board

percentage reduction, citing cases of percentage reductions of 35%. See McDonald v. Pension

Plan, 450 F.3d 91, 96-97 (S.D.N.Y. 2006); 40% (Cho v. Koam Med. Supply Serv., 524 F. Supp.

2d 202, 207-208 (E.D.N.Y. 2007)); 45% (LaBarbera v. D & R Materials, Inc., 588 F.Supp 2d

342, 349 (E.D.N.Y. 2008); and 75% (Days Inn Worldwide, Inc. v. Amar Hotels, Inc., No. 05-Civ-

10100, 2008 WL 2485407, at *10 (S.D.N.Y. June 18, 2008). In this case, the defendants contend

that a reduction of at least 75% is appropriate.

In response, counsel for the plaintiffs assert that attorneys' fees may be awarded for

unsuccessful claims when they are interrelated with successful ones.  In <u>Lundy v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994) the Court held:

> So long as the plaintiffs unsuccessful claims are not wholly
> unrelated to the plaintiffs successful claims, hours spend on the
> unsuccessful claims need not be excluded from the lodestar amount.

In this regard, while plaintiffs' counsel concedes that the successful and unsuccessful claims do not have a common core of facts, he asserts that, "they are based on related legal theories of fiduciary misconduct . . ." (Pltfs' Reply Memorandum at 5).  Also, considerable time was spent in establishing personal liability on the part of the defendant John L. Kearse.  Therefore, the plaintiffs' counsel concludes that the time spent on the unsuccessful claims should not be excluded.  Further, the plaintiffs' counsel also contends that the time consumed on the unsuccessful unjust enrichment claim, presented for the first time during the trial, required no trial work by plaintiffs' counsel.

The plaintiffs' counsel also recognized that it is difficult to divide the hours expended on a "claim by claim" basis.  He concludes that if "the time spend on the unsuccessful unpleaded claim and the unjust enrichment claim is to be excluded from the fees, plaintiffs respectfully suggest a 5% reduction in fees . . .." (Pltfs' Reply Memorandum at 6).  In addition, plaintiffs' counsel consents to exclude a total of 55.2 hours from the period from February 1, 2001 to March 13, 2001, consisting of Miuccio's time of 47.8 hours and the time of law clerk Mariel Rodriguez of 7.4 hours at $35 per hour.

However, the plaintiffs' counsel vigorously denies that his work was excessive, duplicative or unnecessary.  He asserts that the legal issues raised in this extended case were novel, complex and difficult.  This was recognized by the Court's three lengthy decisions on liability and damages.  Also, plaintiffs' counsel states that substantial periods of time were spent

in "hotly contested legal issues," listing ten such issues.

The plaintiffs' counsel concludes his defense of the amount of his counsel fees by many working facts, which, among others, are: (1) his extensive, comprehensive billing records; (2) reviewing hundreds of CAAIG financial and other records spanning a nine year period from 1992 to 2001; (3) preparation for a number of trials including the drafting of pre-trial and post-trial memoranda on liability and damages; and (4) the trials themselves. Miuccio again reiterates that this case was vigorously defended by defense counsel from its inception to its resolution.

According to Miuccio:

> Moreover, "the district court does not play the role of uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." <u>Bliven v. Hunt</u>, 579 F.3d 204, 213 (2d. Cir. 2009). Plaintiffs' counsel have expended a great deal of time and efforts over a lengthy litigation period to achieve complete relief for the class plaintiffs. Defendants have not sustained their burden that plaintiffs' counsel's efforts were unnecessary.
>
> In sum, the substantial time spend on extensive discovery, depositions, pre-motion practice, various briefings and preparation and attending twenty-seven trial sessions contributed to the ultimate success of the lawsuit, and thus was reasonably expended.

(Pltfs' Reply Memorandum of Law at 9 and 10).

## II. <u>Discussion</u>

### A. <u>The Standards</u>

The Court initiates this discussion with the basic rule in this field that "The district court retains discretion to determine, under all the circumstances, what constitutes a 'reasonable' fee." <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 758 (2d Cir. 1998). However, this discretion must be exercised in accordance with many interpretive rules. When a prevailing party is entitled to attorney's fees, the district court must abide by the procedural requirements and substantive rules for calculating those fees, articulated by the Second Circuit and the Supreme Court.

Both the Second Circuit and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required – creates a "presumptively reasonable fee." Arbor Hill Concerned Citizen Neighborhood Ass'n v. Cty of Albany, amended on other grounds, 522 F.3d 182, 183 (2d Cir. 2008); see also Perdue v. Kenny A. Ex rel. Winn, ____ US ____, 130 S.Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010). A review of the cases reveals that, while the lodestar is not always conclusive, absent extraordinary circumstances, it must be calculated as a starting point. So that the district judge should ascertain the number of hours and the reasonable hourly rate used to produce the lodestar figure.

In assessing the presumptively reasonable fee, the Second Circuit has instructed that courts should consider the factors articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), although the district court is not required to recite and make separate findings as to all twelve of the Johnson factors. However, the present major factors were set forth in Arbor Hill, 522 F.3d at 190.

> The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

Here, the defendant objects to both the reasonableness of the hours expended by plaintiffs' counsel and the reasonable hourly rate.

While the district court must calculate the lodestar, it is not "conclusive in all circumstances." Perdue, 130 S.Ct. at 1673. However, the cases reveal that adjustments to the

lodestar are appropriate only in "rare circumstances" because the "lodestar figure (already) includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Id.

## B. **As to the Hourly Rate**

In Arbor Hill, the Second Circuit simplified the former complexities surrounding attorney's fees awards with the traditional "lodestar" approach. This lodestar approach calculated the attorney's usual hourly rate and the number of hours worked, which could then be adjusted by the Court to set the "reasonable fee." A review of the cases as to a "reasonable hourly rate," again brings us back to the Arbor Hill rulings. As stated above, a reasonable hourly rate is "the rate a paying client would be willing to pay," which a court should determine "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190.

In addition, of importance in assessing an attorney's reasonable hourly rate, a court is also required to adhere to what is referred to as the "forum rule." Pursuant to the "forum rule," the Second Circuit has instructed that courts should use the "prevailing [hourly rate] in the community" in determining the reasonable hourly rate. Id. (citing Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). For the purposes of calculating the reasonable hourly rate under the forum rule, the relevant "community" is "the district where the district court sits." Id. (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)); see also Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (finding that district court did not abuse its discretion by reducing fees so that they were line with other fees awarded in the Eastern District of New York); Luciano v. Olsten Corp., 109 F.3d 111, 115-16 (2d Cir. 1997) (holding that the district court, in setting fees, appropriately relied upon prevailing market rates in the Eastern District of New York where the case was commenced and litigated).

Further, the cases have emphasized that deviation from the forum rule is only appropriate "in the unusual case." Arbor Hill, 493 F.3d at 119. In Simmons v. New York City Transit Authority, 575, F.3d 170, 174 (2d Cir. 2009), the Second Circuit further elaborated on the possible exception to the "forum rule." However, in the Court's view, none of these exceptions apply to this case. In Simmons, the Second Circuit ruled that it was error to award the Southern District hourly rate in an Eastern District case, and the Court reduced the attorney's fees award by $45,000, "which represents the difference between the prevailing hourly rate of the Southern District and the Eastern District." Id. at 177.

This case was commenced and litigated in the Eastern District of New York, and in particular, in the Central Islip Court. In past years, the reasonable hourly rate in the Eastern District of New York has been reviewed in a number of cases. In Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997), the district court's assessment of $200 per hour for partners, $135 per hour for associates and $50 per hour for paralegals, were held to be in line with the rates awarded in the Eastern District, as of 1997. See also First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, No. CV 95-2418, 1996 WL 521410, at *2 (E.D.N.Y. Sept. 3, 1996); Bourgal v. Atlas Transit Mix Corp., No. CV 93-0569, 1996 WL 75290, at *6 (E.D.N.Y. Feb. 7, 1996); New York State Ass'n of Realtors, Inc. v. Shaffer, 898 F.Supp. 128, 133 (E.D.N.Y. 1995); DeVito v. Hempstead China Shop, Inc., 831 F.Supp. 1037, 1044 (E.D.N.Y. 1993); Cabrera v. Fischler, 814 F.Supp. 269, 288 (E.D.N.Y. 1993), aff'd in rel. part, 24 F.3d 372 (2d Cir. 1994), cert. denied, 513 U.S. 876, 115 S.Ct. 205, 130 L. Ed. 2d 135 (1994); Cruz v. Local Union No. 3, 150 F.R.D. 29, 34-35 (E.D.N.Y. 1993), aff'd in rel. part, 34 F.3d 1148 (2d Cir. 1994); Nu-Life Constr. Corp. v. Bd. of Educ., 795 F.Supp. 602, 606 (E.D.N.Y. 1992), aff'd in rel. part, 28 F.3d 1335, 1342-43 (2d Cir. 1994).

More recently, in 2011, the Second Circuit affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. Konits v. Karahalis, 409 F. App'x 418, 422-23 (2d Cir. 2011). Similarly, another court has recently observed that "reasonable fees in this district vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates" and $70 to $80 for paralegals or legal assistants. Penberg v. HealthBridge Mgmt., No. 08-CV-1534, 2011 WL 1100103, at * 6-7 (E.D.N.Y. March 22, 2011).

The Court also notes that the cases cited by the plaintiffs' counsel, are essentially similar with regard to the prevailing rates in the Eastern District. See Toussie v. Cty of Suffolk, No. CV 01-6716, 2011 WL 2173870 (E.D.N.Y. May 31, 2011) (an associate with 17 years experience $400 per hour); Thorsen v. County of Nassau, No. CV 03-1022, 2011 WL 1004862 (E.D.N.Y. Mar. 17, 2011) (awarding associates with 21 years of experience $350 per hour, associate with 11 years of experience and 5 years of experience $300 per hour and a paralegal $100 per hour); Brady v. Wal-Mart Stores, Inc., No. CV 03-3843, 2010 WL 4392566, at *5 (E.D.N.Y. Oct. 29, 2010) ("Fee awards in this district in recent years have approved hourly rates in the range of $200 to $400 for partners, $100 to $295 for associates, and $70 to $100 for paralegal assistants").

Plaintiffs' counsel also cites to certain district court decisions in the Eastern District which have awarded up to $450 per hour. This Court does not agree that such an hourly rate is the "reasonable hourly rate" in the Eastern District, as interpreted by the decisions of the Second Circuit and the Supreme Court.

A review of the plaintiffs' counsel's "attorneys affirmation," dated November 7, 2011, reveals that he is requesting an award for himself and his staff in the following requested hourly rates.

| | | |
|---|---|---|
| Alexander A. Miuccio | Partner | $400 |
| Janet Connolly | Partner | $260 |
| Associates in the law firm in which Miuccio has been a partner | | $35 to $320 |
| Law Clerks in two of the law firms in which Miuccio has been a partner | | $35 to $80 |
| Paralegals in one of the law firms in which Miuccio has been a partner | | $95 |

Based on the cases cited above, the experience of counsel and the kind of litigation involved in this case, the Court makes the following determinations as to the prevailing party hourly rates to be awarded:

| | | |
|---|---|---|
| Alexander A. Miuccio | Partner | $350 per hour |
| Janet Connolly | Partner | $260 per hour |
| All Associates | | $225 per hour |
| All Law Clerks and the Paralegal | | $75 per hour |

## C.  As to the Reasonable Number of Hours

At page three of the Miuccio "attorneys affirmation" of November 7, 2011, the various phases of this litigation are delineated and separately set forth.  From the inception of this suit on December 13, 2000 to October 25, 2011, the hours billed are set forth.  The requested total sum for all the attorneys fees during that period is the sum of $846,306, of which Miuccio himself requests the sum of $786,744 for his 1,966.86 hours.  The total request is as follows:

**Altieri, Kushner, Miuccio & Frind, P.C.:**

| Name | Position | Experience | Hourly Rate | Hours Billed | Subtotal |
|---|---|---|---|---|---|
| Alexander A. Miuccio | Partner | 52 years | $400* | 324.9 | $129,960.00 |
| Barry Mendelson | Associate | 33 years | $195 | 2.0 | $     390.00 |
| Michael Silverstein | Associate | 19 years | $195 | 1.9 | $     370.00 |
| Marisel Rodriquez | Law Clerk | | $35 | 8.2 | $     287.00 |
| Michael James | Associate | | $35 | 5.2 | $     182.00 |

**Goldberg & Connolly:**

| Name | Position | Experience | Hourly Rate | Hours Billed | Subtotal |
|------|----------|-----------|-------------|--------------|----------|
| Alexander A. Miuccio | Partner | 52 years | $400* | 871.7 | $348,680.00 |
| Janet Connolly | Partner | 22 years | $260 | 1.0 | $ 260.00 |
| Michael Silverstein | Associate | 20 years | $225 | 9.1 | $ 2,047.00 |
| Robert Napoles | Associate | 14 years | $225 | 20.0 | $ 4,500.00 |
| Joseph Sisca | Associate | 2 years | $157 | 235.4 | $ 36,942.00 |
| Assunta Inario | Paralegal | 2 years | $95 | 14.4 | $ 1,368.00 |

**Welby, Brady & Greenblatt, LLP:**

| Name | Position | Experience | Hourly Rate | Hours Billed | Subtotal |
|------|----------|-----------|-------------|--------------|----------|
| Alexander A. Miuccio | Partner | 52 years | $400* | 770.26 | $308,104.00 |
| S. Dean Kim | Associate | 12 years | $300 | 22.16 | $ 6,648.00 |
| Gregory Spaun | Associate | 10 years | $320 | 12.4 | $ 3,968.00 |
| Vadim Cherkasov | Law Clerk | | $80 | 24.6 | $ 1,968.00 |
| Anna Dokuchayeva | Law Clerk | | $80 | 7.9 | $ 632.00 |
| | | | **TOTAL** | | **$846,306.00** |

In addition, the plaintiffs request reimbursement for the reasonable attorney's fees involved in the preparation of the fee application during the period from October 26, 2011 to November 7, 2011. In this regard, the plaintiffs propose the following hourly rate and hours reasonably expended in making the fee application:

| Name | Hourly Rate | Hours Billed | Subtotal |
|------|-------------|--------------|----------|
| Alexander A. Miuccio | $400 | 25.8 | $10,320.00 |
| Gregory Spaun | $320 | 2.2 | $ 704.00 |
| Noreen Hoey | $80 | 2.0 | $ 160.00 |
| | | **TOTAL** | **$11,184.00** |

However, the Court declines to award an additional fee to the plaintiffs for the preparation of the reply affirmation and reply memorandum of law. The number of hours claimed in this regard, namely 36.4 hours and the additional fee requested in the sum of $14,560 seems unreasonable to the Court and will not be reimbursed.

Also, as stated above, Miuccio consents to exclude 47.8 hours of his time and 7.4 hours of his law clerk's time. Therefore, the net total time claimed by Miuccio is 1,944.9 hours; for partner Janet Connolly one hour; for his associates 310.36 hours; and 57.1 hours for the law clerks and paralegals.

**D.  Whether Counsel's Fee Should Be Reduced By the Unsuccessful Causes**

The Second Circuit has observed that the district courts retain the authority to reduce a fee award by reason of the plaintiffs' "partial or limited success." Kassim v. City of Schnectedy, 415 F.3d 246, 256 (2d Cir. 2005). In Kassim, it was explained that the Supreme Court "has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." Id. at 253. In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L. Ed. 2d 40 (1983), the Supreme Court took the "opportunity to clarify the proper relationship of the results obtained to an award of attorney's fees." Id. at 432, 103 S.Ct. 1933. In Hensley, the seminal case in this field, the Supreme Court concluded that "the most critical factor is the degree of success obtained." Id. at 436, 103 S.Ct. 1933. The Court distinguished between two types of cases and results. In one type of case, there are a number of "distinctly different claims for relief that are based on different facts and legal theories." There are other types of cases that "present only a single claim" or which "involve a common core of facts or will be based on related legal theories." The Court went on to explain how each type of case should be evaluated on the fee-awarding basis:

> In the first type of case involving different claims, counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

17

Id. at 435, 103 S.Ct. 1933 (internal quotation marks and citations omitted).

> In the more unitary cases – those involving a common core of facts or related legal theories – it is more difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . encompass[ing] all hours reasonably expended . . .. [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . ..

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

Id. at 435-36, 103 S.Ct. 1933. The Court stressed:

> [T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988 . . .. [W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

Id. at 440, 103 S.Ct. 1933.

In a prior decision, the Court expressly reserved for this opinion, the determination of whether the "plaintiffs' partial success required a reduction in the fee . . . [T]he issue will be confronted in the Court's determination of the amount of attorneys' fees." LI Head Start, 820 F. Supp. 2d at 428. The defendants now contend that throughout the trial the plaintiffs primarily claimed that the defendants breached their fiduciary duties by "diverting" the Head Start reserves by using these reserves to pay for claims of the CAAIG beneficiaries and administrative expenses. The Court agrees.

18

Upon a review of the lengthy proceedings in this matter, the Court finds that a primary relief requested by the plaintiffs was unsuccessful, namely, the cause of action seeking reimbursement of their allegedly "diverted" contributions to the CAAIG. A substantial part of the liability trial was devoted to the "diversion" cause of action. In the Court's prior decision of July 8, 2009, the plaintiffs' diversion cause of action – a main cause – was dismissed.

Notwithstanding the strong language in the ERISA statutes, there has been no breach by the defendants in the use of L.I. Head Start reserves. In particular, the defendants did not violate the "Prudent Man Standard of Care" and the required "care, skill, prudence and diligence" that a "prudent man acting in like capacity" would use in a similar situation. With reasonable certainty, even a prudent trustee of a community organization such as the participating agencies in this case, would have relied on the two amendments to the Trust Agreement, which expressly permitted them to use the monies alleged to be reserves and the property of L.I. Head Start. Nor did the complaint state in any way the amendments were not valid and binding. Nor does the fact that on March 3, 2000, this Court determined that CAAIG should have transferred its reserves to L.I. Head Start when it terminated its participation in CAAIG, alter the decision that at the time, the participants had a right to rely on the amendments to the Trust Agreement, and use the reserves to pay employee benefits and administration expenses.

Accordingly, the Court finds that the plaintiffs failed to prove that the defendants breached their fiduciary duty when they diverted the L.I. Head Start reserves to their own purposes and uses, namely, to pay employee benefits and administration expenses. This claim is dismissed.

In addition, in the July 8, 2009 decision, the Court dismissed the plaintiffs "unjust enrichment" cause of action. In that prior decision, the Court made the following final determinations, upon which this claim for attorneys' fees is based:

1.      The plaintiffs failed to establish that defendants EOC Nassau, EOC Suffolk and Yonkers CAP breached their respective fiduciary duties when they diverted the L.I. Head Start reserves to their own purpose and uses, namely, to pay employee benefits and administrative expenses. Accordingly, judgment is rendered in their favor on this claim.

2.      The plaintiffs have established, by a preponderance of the evidence, that the defendants EOC Nassau, EOC Suffolk, Yonkers CAP and the Estate of John L. Kearse violated their fiduciary duties under the provisions of ERISA, by failing to make the necessary contributions to adequately fund the CAAIG Plan.

The parties shall appear for a damages hearing on this issue on Tuesday, September 8, 2009 at 10:00 a.m. in Courtroom 1020.

       3.      The plaintiffs have established, by a preponderance of the evidence, that the defendants EOC Nassau, Yonkers CAP and the Estate of John L. Kearse violated their fiduciary duties under the provisions of ERISA in failing to collect the delinquent contributions from EOC Suffolk. Accordingly, judgment is rendered against the defendants EOC Nassau, Yonkers CAP and the Estate of John L. Kearse, in the sum of $9,000, with interest from June 30, 1998 to the date of the judgment.

       4.      The plaintiffs have failed to establish that the defendants EOC Nassau, EOC Suffolk and Yonkers CAP were unjustly enriched by the diversion of the L.I. Head Start reserves. Accordingly, judgment is rendered in favor of those defendants as to that claim.

**SO ORDERED.**

As to the degree of success, the cases are divided on whether there should be a reduction and as to the amount of the reduction. There is a wide disparity in these "reduction" rulings. For example in Spear v. Nassau County Dept. of Social Services, 327 F. Supp. 2d 187, 192 (E.D.N.Y. 2004), the "plaintiff originally pled several causes of action but failed to submit any material evidence in support . . . [and this] resulted in dismissal of those claims at the close of the plaintiff's case [and] . . . achieved only limited success," which required a 40% reduction. In Hine v. Maneta, 253 F.Supp. 464, 467 (E.D.N.Y. 2003), there was a "lack of success on two of the three causes of action" and the jury awarded no damages for emotional distress and back pay. This Court reduced the attorney's fees by 60%. Also, in Coffey v. Dobbs International Services Inc., 5 F. Supp. 2d 79, 86 (N.D.N.Y. 1998), rev'd on other grounds, 170 F.3d 323 (2d Cir. 1999), the Court held that the harassment and retaliation claims were related, but it reduced the fee by 20% because the plaintiff was "unsuccessful as to every other claim, largely due to his failure to prove damages."

Here, the two unsuccessful causes have a partial common core of facts with the successful causes of action but do not share related legal theories. Therefore, there should be a reduction in the fee for the two unsuccessful causes. As the cases say, where the plaintiff achieved only

limited success, the district court should award only that amount of fees that is "reasonable" in relation to the results achieved. Accordingly, a reduction of thirty-five percent in the plaintiffs' counsel fee is appropriate.

### III. Conclusions

In sum, the Court makes the following determinations:

The motion by the plaintiffs' counsel for attorney's fees are awarded as follows:

1.    Prevailing party attorney's fees are awarded in the following hourly rates:

| | |
|---|---|
| Alexander A. Miuccio, Partner | $350 per hour |
| Janet Connolly, Partner | $260 per hour |
| All Associates | $225 per hour |
| All Law Clerks and the Paralegal | $75 per hour |

2.    Prevailing party attorney's fees are awarded for the entire period, including the liability trial; the damages trial, and the preparation of the fee application, with the exception of the fee reply papers by plaintiffs' counsel, as follows:

| | | |
|---|---|---|
| Alexander A. Miuccio | Partner | 1,944.9 hours computed as follows: |
| For all services – December 13, 2000 to October 25, 2011 – 1,966.86 hours | | |
| For the fee application | | 25.8 hours |
| Total Miuccio hours | | 1,992.7 hours |
| Less the agreed reduction | | 47. 8 hours |
| Total net allowable hours to Miuccio | | 1,944.9 hours |
| Janet Connolly, Partner | | 1 hour |

| | | |
|---|---|---|
| Total Associates | 310.36 hours | |
| Total Law Clerks and Paralegal | 57.1 hours | |

Multiplying the number of hours by the hourly rates fixed by the Court, results in the following figures:

| | | |
|---|---|---|
| Alexander A. Miuccio | 1,944.9 hours @ $350 = | $ 680,715 |
| Janet Connolly | 1 hour @ $260 = | $ 260 |
| Associates | 310.36 hours @ $225 = | $ 69,831 |
| Law Clerks and Paralegal | 57.1 hours @ $75.00 = | $ 4,282.50 |
| | TOTAL FEES | $755,088.50 |
| Less the reduction for the unsuccessful causes | | Less 35% |
| | NET FEE AWARD | $490,807.53 |

The Clerk of the Court is directed to enter judgment for the full amount of the causes of action for the plaintiffs, together with attorney's fees in the sum of $490,807.53, in accordance with this decision and order, and prejudgment interest.

After the entering of judgment, the Clerk of the Court is further directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
April 24, 2012

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge